United States District Court
Southern District of Texas
**ENTERED**
October 26, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

OSMAN MORENO,                    §
                                 §
          Plaintiff,             §
                                 §
v.                               §     CIVIL ACTION NO. H-19-2968
                                 §
SENTINEL INSURANCE COMPANY,      §
LIMITED, and THE HARTFORD        §
FINANCIAL SERVICES GROUP, INC.,  §
                                 §
          Defendants.            §

MEMORANDUM AND ORDER

Pending are Defendant Sentinel Insurance Company Limited's Motion for Summary Judgment (Document No. 16) and Plaintiff's Motion for Summary Judgment (Document No. 18). After carefully considering the motions, responses, reply, and applicable law, the Court concludes as follows.

I. Background

This is an insurance dispute arising from injuries Plaintiff Osman Moreno sustained in July 2016 when he fell off a ladder while working as a painter for NF Painting.[1] In November 2016, Moreno filed suit in state court, alleging claims for negligence, gross negligence, and negligence per se against NF Painting and against Beazer Homes Texas, L.P. and Beazer Homes Texas Holdings, Inc.

---

[1] NF Painting is variously identified in the briefs and summary judgment record as NF Painting, N.F. Painting, N&F Painting, and NF Painting, Inc.

(collectively, "Beazer"), the homebuilder that had contracted with NF Painting.[2]

NF Painting's owner, Nelson Flores d/b/a N&F Painting, was insured by Defendant Sentinel Insurance Company, Limited, pursuant to a Business Owner's Policy that covered liability for damages because of bodily injury.[3]   The policy limits for personal injury were $1,000,000.  However, the policy contained two exclusions that precluded recovery for injuries to NF's employees, as follows:

**B.    EXCLUSIONS**

    **1.    Applicable to Business Liability Coverage**

    This insurance does not apply to:

    . . .

    **d.    Workers' Compensation And Similar Laws**

    Any obligation of the insured under a workers' compensation, disability bene-fits or unemployment compensation law or any similar law.

    **e.    Employer's Liability**

    "Bodily injury" to:

    (1)  An "employee" of the insured arising out of and in the course of:

---

[2] Document No. 16, ex. A-10 at 6 of 10 (Orig. Pet. in underlying suit).  This underlying suit was filed as Cause No. 2016-77495 in the 189th Judicial District Court of Harris County, Texas.

[3] Id., ex. A-1.

2

     (a)    Employment by the insured; or

     (b)    Performing duties related to the conduct of the insured's business[.][4]

Upon being sued, NF Painting did not notify Sentinel of the lawsuit or request that Sentinel provide a defense, but instead retained its own counsel, Armando Lopez, to defend the suit.[5] Six months after Moreno filed suit, Beazer's counsel contacted Sentinel and sent to Sentinel copies of correspondence from Beazer's counsel to NF Painting's counsel which enclosed a copy of Beazer's letter sent to Nelson Flores, NF Painting, tendering and demanding defense and indemnity pursuant to their Master Construction Agreement.[6] Sentinel, which had no previous notice of Moreno's lawsuit, issued to NF Painting a letter acknowledging receipt of Beazer's claim immediately upon receiving the notice of such from Beazer.[7]

On May 22, 2017, a few days after receiving the correspondence from Beazer, Julie Katchmir, a claims consultant acting on behalf of Sentinel, called and emailed Armando Lopez, NF Painting's counsel, to ask if he represented NF Painting in the lawsuit and to discuss Beazer's Tender Letter.[8]   Lopez made no response to

---

[4] Id., ex. A-1 at 26 of 90 to 27 of 90.

[5] Id., ex. A ¶¶ 4, 9 (Decl. of Julie Katchmir).

[6] Id., ex. A ¶ 5; id., ex. A-3.

[7] Id., ex. A ¶ 6; id., ex. A-4.

[8] Id., ex. A ¶¶ 7-8.

Katchmir's voice message or email.[9]  On May 30, Katchmir spoke with NF Painting's owner, Nelson Flores, on the telephone.[10]  Flores advised Katchmir that Lopez was representing NF Painting in the lawsuit and recommended that she contact Lopez to obtain a copy of the petition.[11]  Flores made no request for Sentinel to defend or indemnify him or NF Painting.[12]

On June 2, Sentinel wrote to Beazer's counsel and agreed to defend and indemnify Beazer in the lawsuit.[13]  On June 12, Katchmir in behalf of Sentinel again wrote to attorney Lopez by U.S. mail and email, asking him to contact her to discuss the lawsuit "as soon as possible" if he was in fact representing NF Painting.[14]  The next day, Lopez spoke with Katchmir on the telephone and confirmed that he was representing NF Painting in the lawsuit.[15]  Lopez also confirmed that NF Painting did not report or tender the lawsuit to Sentinel and instead hired Lopez because Flores, NF Painting's owner, did not believe there would be coverage for the lawsuit under Sentinel's policy because Moreno was an employee of NF

---

[9] Id.

[10] Id., ex. A ¶ 9.

[11] Id.

[12] Id.

[13] Id., ex. A ¶ 10; id., ex. A-6.

[14] Id., ex. A ¶ 11; id., ex. A-7.

[15] Id., ex. A ¶ 12.

Painting.[16]  Despite the fact that NF Painting made no tender or demand to Sentinel, Katchmir asked Lopez to provide to her a copy of the petition.[17]

Later that day, Lopez's office sent an email to Katchmir with copies of NF Painting's Original Answer, Responses to Moreno's Requests for Admissions, Responses to Moreno's Request for Production, Responses to Moreno's Request for Disclosure, and Answers to Moreno's Interrogatories.[18]  Moreno's Request for Admission No. 6 was to "[a]dmit that you possess insurance coverage to cover potential liability against you in this action," and No. 7 was to "[a]dmit that you possess excess insurance coverage to cover potential liability against you in this action," and Defendant NF Painting responded to both requests "Deny."[19]  Moreno's Request for Production No. 1 was for NF Painting to produce "[a]ll policies of insurance that cover the occurrences in question, including excess coverage(s), which were in effect on the date of the incident made the basis of this suit."[20]  NF Painting responded, "Defendant does not have documents responsive to this request."[21]

---

[16] Id.

[17] Id.

[18] Id., ex. A-8.

[19] Id., ex. A-8 at 9 of 50.

[20] Id., ex. A-8 at 13 of 50.

[21] Id.

But Lopez's office did not send to Katchmir the requested copy
of the petition, so she responded to ask again for a copy of the
petition.[22]   Six days later, on June 19, Lopez finally emailed a
copy of the petition to Katchmir.[23]   Again, Lopez made no request
for Sentinel to defend and indemnify NF Painting.[24]   On July 5,
Sentinel mailed a letter to NF Painting and Lopez indicating that
Sentinel had reviewed the materials in the case and disclaimed
coverage under the policy because Moreno was an employee of NF
Painting and was injured while in the course and scope of that
employment.[25]   Lopez did not respond, and the letter mailed to NF
Painting was returned to Sentinel unclaimed.[26]   Katchmir then
emailed Lopez a copy of the letter, to which Lopez did not
respond.[27]

Beazer settled with Moreno in September 2018 and was later
dismissed from the suit.[28]   On October 23, 2018, Moreno filed a
First Amended Petition against NF Painting, in which he removed the
reference to NF Painting's employees and now alleged that he was

---

[22] Id., ex. A ¶ 13; id., ex. A-9.

[23] Id., ex. A ¶ 14; id., ex. A-10.

[24] Id., ex. A ¶ 14; id., ex. A-10.

[25] Id., ex. A ¶ 15; id., ex. A-11.

[26] Id., ex. A ¶¶ 15-16.

[27] Id., ex. A ¶ 16.

[28] Id., ex. A ¶ 17.

injured "while he was working as an independently contracted painter on a project for Defendant NF Painting, Inc."[29]  Neither NF Painting nor Lopez notified Sentinel of the amended pleading or requested coverage by Sentinel.[30]

Trial was scheduled for April 15, 2019, but that setting was not reached and the case was reset for trial in August 2019.[31] Nonetheless, after the April 15 trial date was reset to August, Moreno and NF Painting filed a "Proposed Agreed Judgment," which recited that the case had proceeded to trial on April 15, that the Court had heard evidence and made findings of fact and conclusions of law, and that NF Painting would be adjudged liable to Moreno for sums exceeding $1.6 million.[32]  This curious document decreed that Moreno had been injured "while working as an independently contracted painter who was contracted by N.F. Painting, Inc."; that Moreno "was not an employee of N.F. Painting, Inc. at the time he was injured"; that NF Painting was insured by Sentinel at the time of the injury; that NF Painting "placed its insurer on proper notice of Osman Moreno's claims"; and that Moreno should have and recover a total of $1,627,541.35 plus pre- and post-judgment

---

[29] <u>Id.</u>, ex. A-3 ¶ 6.

[30] <u>Id.</u>, ex. A ¶ 18.

[31] <u>Id.</u>, exs. B-2, B-3.

[32] <u>Id.</u>, ex. B-4.

interest and court costs.[33]  The state court signed the Proposed Agreed Judgment submitted by the parties on May 20, 2019, three days after they filed it.[34]  Neither NF Painting nor Lopez reported the Agreed Judgment to Sentinel or requested insurance coverage from Sentinel in connection therewith.[35]

One understandably wonders why NF Painting should suddenly confess judgment for damages in excess of $1.6 million.  The answer emerges a month later when Moreno filed this suit in state court against Sentinel and Defendant The Hartford Financial Services Group, Inc. ("Hartford"), alleging that he is a third-party beneficiary of Sentinel's insurance policy and that Defendants failed to satisfy their obligations under the policy with respect to the underlying suit against NF Painting.[36]  Defendants removed on the basis of diversity jurisdiction, and Moreno later dismissed his claims against Hartford.[37]  Moreno and Sentinel have filed cross-motions for summary judgment.  Sentinel argues that Moreno's claim fails because NF Painting did not request a defense and also because Moreno was an employee of NF Painting such that his injury

---

[33] Id.

[34] Document No. 18, ex. B.

[35] Document No. 16, ex. A ¶ 19.

[36] Document No. 1-2 (Orig. Pet.).

[37] Document Nos. 1, 8.

was not covered by the policy.[38]   Moreno argues that collateral estoppel requires finding that Moreno was covered by the policy, and in the alternative, the evidence establishes as a matter of law that Moreno was an independent contractor.[39]

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.   Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   Id.   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every  essential component of its case."   Id.   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:   (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence

---

[38] Document No. 16.

[39] Document No. 18.

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the fact finder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III. <u>Discussion</u>

A.   <u>Collateral Estoppel</u>

Moreno asserts that collateral estoppel requires a judgment that Plaintiff was an independent contractor and therefore not excluded from coverage by the terms of Sentinel's policy.   In a diversity suit involving the collateral estoppel effects of a prior state court determination, the court applies the state's law of collateral estoppel.   <u>Hicks v. Quaker Oats Co.</u>, 662 F.2d 1158, 1166 (5th Cir. 1981).   Under Texas law, a party asserting collateral estoppel "must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."   <u>Sysco Food Servs., Inc. v. Trapnell</u>, 890 S.W.2d 796, 801 (Tex. 1994) (citations omitted).

"The requirement that an issue be 'actually litigated' for collateral estoppel purposes" does not depend on the case having reached trial but "requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined."   <u>In re Keaty</u>, 397 F.3d 264, 272 (5th Cir. 2005).   None of this happened.   The state court records reflect that in fact there was no trial and on April 15, the day that the putative "trial" was being conducted, the trial court's official minutes

11

reflect the trial was "NOT REACHED" and the case was actually "Re-Set" to August.[40] Thus, the summary judgment evidence reflects that the state court merely signed the parties' agreed submission, in which Moreno and NF Painting agreed to a set of putative facts to establish Sentinel's liability for a judgment that served the mutual benefit of Moreno and NF Painting and was to the detriment of Sentinel. There is no summary judgment evidence that the court decided any issues actually in contest between Moreno and NF Painting. As a matter of law Moreno has not established that the findings recited in the Proposed Agreed Judgment were actually litigated. *Cf.* State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996) ("In no event . . . is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.").

Even if the prior suit had been fully and fairly litigated, Moreno has failed to establish other essential elements necessary for collateral estoppel. The Proposed Agreed Judgment submitted by Moreno and NF Painting and signed by the state court states that Moreno was an independent contractor and not an employee of NF Painting at the time of his injury and that NF Painting put

---

[40] Document No. 16, ex. B-2.

12

Sentinel on proper notice of Moreno's claims.  In no way are these recited facts "essential to the judgment in the first action," Trapnell, 890 S.W.2d at 80, in which Moreno sued for damages from NF Painting based on allegations of NF Painting's negligence, gross negligence, and negligence per se.  The Proposed Agreed Judgment, however, contains no findings of negligence, gross negligence, or negligence per se by NF Painting, nor any finding that NP Painting's negligence was a proximate cause of Moreno's injuries. Moreover, nothing in the summary judgment record shows that Moreno and NF Painting were in fact adversaries with respect to their agreed recitations in the Agreed Judgment transparently intended to establish Sentinel's liability for the judgment.  The summary judgment evidence is that Moreno and NF Painting, both of whom stood to benefit from establishing Sentinel's liability, never notified Sentinel of the amended petition or of the Proposed Agreed Judgment until well after it was a *fait accompli*.  Moreno likewise has not presented summary judgment evidence showing that NF Painting was in privity with Sentinel with respect to the agreed

judgment.[41]  Moreno has wholly failed to establish that collateral estoppel applies under this set of sordid facts.

B.   NF Painting's Failure to Request a Defense

Moreno alleges that Sentinel breached its contract when it "failed to satisfy [its] obligations" to NF Painting pursuant to the insurance policy, despite being aware of the claims and the judgment in the underlying suit.[42]  Although Moreno's pleadings do not expressly identify the obligations Sentinel is alleged to have breached, it is evident from Moreno's briefing that he finds fault with Sentinel for failing to provide a defense and pay the judgment in the underlying suit.

Section E.2 of the policy's Business Liability Coverage Form provides that NF Painting's "Duties In The Event of Occurrence, Offense, Claim Or Suit" include the following:

---

[41] Moreno relies on Truck Ins. Exch. v. Mid-Continent Cas. Co., 320 S.W.3d 613 (Tex. App.-Austin 2010, no pet.), to argue that NF Painting and Sentinel were in privity as insured and insurer.  The court in Truck explained that "[p]rivity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation," and found privity between an insured and the insurer who had taken over defense of the insured's suit, where both parties were seeking to establish the liability of an additional insurer.  Id. at 618.  Here, in contrast, it was Moreno and NF Painting, not NF Painting and Sentinel, who shared an interest in establishing that Sentinel must pay Moreno's judgment to which NF Painting agreed.

[42] Document No. 1-2 ¶¶ 10-15.

**b.    Notice of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured must:

(1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)    Notify us as soon as practicable.

You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

**c.    Assistance and Cooperation of the Insured**

You and any other involved insured must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.[43]

It is well-established under Texas law that "there is no duty to provide a defense absent a request for coverage." Nat'l Union Fire Ins. Co. v. Crocker, 246 S.W.3d 603, 607 (Tex. 2008).  The Supreme Court of Texas's cases upholding this principle "turn on the recognition that notice and delivery-of-suit-papers provisions in

---

[43] Document No. 16, ex. A-1 at 38 of 90.

insurance policies," like those quoted just above from the Sentinel policy issued to NF Painting, "serve two essential purposes:   (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer that a defense is expected."   Id. at 608 (citing Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170 (Tex. 1995); Weaver v. Hartford Acc. & Indem. Co., 570 S.W.2d 367 (Tex. 1978)).

The insurer in Crocker was defending its primary insured in litigation and was aware that an additional insured had been served with process, but the Supreme Court of Texas explained that this knowledge did not obligate the insurer to defend the additional insured because "[m]ere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy." Id.   The court explained that "there is no unilateral duty to act unless and until the additional insured first requests a defense--a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf." Id.

Subsequent Texas decisions have reiterated that an insured must request a defense to trigger an insurer's duty to defend. E.g., Hoel v. Old Am. Cty. Mut. Fire Ins. Co., No. 01-16-00610-CV, 2017 WL 3911020, at *3 (Tex. App.-Houston [1st Dist.] Sept. 7, 2017, pet. denied) ("An insurer has no duty to defend or to

16

indemnify an insured unless the insured forwards suit papers and requests a defense in compliance with the policy's notice-of-suit conditions.   Compliance with a notice provision is a condition precedent to an insurer's liability on the policy.") (citations omitted) (affirming summary judgment for insurer where insured failed to comply with policy's notice provisions); Hudson v. City of Houston, 392 S.W.3d 714, 725 (Tex. App.-Houston [1st Dist.] 2011, pet. denied) ("With regard to notice, the Supreme Court of Texas has consistently held that an insurer has no duty to defend or to indemnify an insured unless the insured forwards suit papers and requests a defense in compliance with the policy's notice-of-suit conditions.") (citations omitted) (affirming summary judgment for city denying a Stowers claim where city's employee failed to provide to the city a notice of suit against the employee, as required by city ordinance governing the city's provision of liability coverage for its employees, despite the fact that the city was itself also a defendant in the case and had actual knowledge of suit).

The uncontroverted summary judgment evidence is that NF Painting did not comply with its obligations under Section E.2 or otherwise notify Sentinel of Moreno's suit or ever request a defense from Sentinel.[44]   Rather, Sentinel learned of the suit six months after it was filed when Beazer contacted Sentinel regarding

---

[44] Document No. 16, ex. A ¶ 4.

17

coverage as an additional insured.[45]   Sentinel then reached out to Armando Lopez, NF Painting's counsel, who did not respond, and spoke to Nelson Flores, NF Painting's owner and the named insured on the policy, who directed Sentinel to speak with Lopez and did not request defense or indemnification.[46]   Sentinel repeatedly followed up with Lopez, who often was unresponsive, but when Lopez spoke to Sentinel's Katchmir on June 13, 2017, he stated that NF Painting did not report or tender the lawsuit to Sentinel and instead hired him because NF Painting believed there would not be coverage for the lawsuit because Moreno was its employee.[47]   NF Painting through its counsel Lopez responded to Moreno's request for admissions and for production with unambiguous responses that NF Painting had no insurance coverage that would "cover potential liability" for Moreno's claim,[48] and delivered copies of these judicial denials of insurance coverage to Sentinel.   Neither NF Painting nor Lopez on its behalf ever requested a defense from Sentinel, not even after Moreno amended his pleading to allege for the first time that Moreno was working as an independent contractor

---

[45] <u>Id.</u>, ex. A ¶ 5; <u>id.</u>, ex. A-3.

[46] <u>Id.</u>, ex. A ¶¶ 7-9.

[47] <u>Id.</u>, ex. A ¶¶ 11-12

[48] <u>Id.</u>, ex. A-8 at 9 of 50, 13 of 50.

for NF Painting when he was injured, all in breach of its obligations under Section E.2 of the policy.[49]

Based on the uncontroverted summary judgment evidence establishing that NF Painting not only never requested a defense, but affirmatively told Sentinel through counsel that it did not report or tender the suit because it had concluded there was no coverage, Sentinel had no duty to defend NF Painting. Crocker, 246 S.W.3d at 607; Hoel, 2017 WL 3911020, at *3; Hudson, 392 S.W.3d at 725. Moreno relies on Sentinel's July 5, 2017 letter to NF Painting stating that Sentinel had reviewed the documents provided by Lopez and "disclaim[ed] coverage" because Moreno's injury was not covered by the policy, and on the recitation in the Agreed Judgment that "N.F. Painting, Inc. placed its insurer on proper notice of Osman Moreno's claims."[50]  It is undisputed in the summary judgment evidence that the documents Sentinel reviewed were the pleadings it had repeatedly requested from NF Painting even though NF Painting had told Sentinel it did not request a defense. The fact that Sentinel, upon whom a demand had been made by Beazer as an additional insured, affirmatively explained to NF Painting why there was no coverage--thereby agreeing with NF Painting's consistent position--is no evidence whatever that NF Painting ever requested a defense or indemnity. Not surprisingly, Moreno cites

---

[49] Id., ex. A ¶ 18.

[50] Document No. 16, ex. A-12; id., ex. B-5 at 2; Document No. 20 at 7.

no authority suggesting that the sending of pleadings to an insurer at the insurer's request immediately after the insured has expressly stated that it did *not* tender the suit to the insurer because there was no coverage--as the uncontroverted summary judgment evidence establishes here--can be construed as a demand for a defense that gives rise to a duty to defend. *See* Crocker, 246 S.W.3d at 610 ("[D]espite its actual knowledge of a covered suit against and service of process on Morris, National Union did not incur a duty to inform Morris of available coverage or his entitlement to a defense or to sua sponte provide one without any indication from Morris, either explicit or implicit, that he wanted or expected to be defended."). Because NF never requested a defense, Sentinel did not breach its policy obligations by not providing a defense or paying the agreed judgment against NF Painting, regardless of whether the policy in fact covered NF Painting's liability for Moreno's injuries. Accordingly, Sentinel is entitled to summary judgment.

## IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Sentinel Insurance Company Limited's Motion for Summary Judgment (Document No. 16) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 18) is

DENIED, and Plaintiff Osman Moreno's claims are DISMISSED on the merits with prejudice.

A Final Judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 24 TH day of October, 2020.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

21